Barry HARRISON, Appellant,

v.

UNITED STATES, Appellee.

No. 85–515.

District of Columbia Court of Appeals.

Argued May 19, 1987.
Decided June 18, 1987.

---

Geoffrey D. Allen, appointed by this court, for appellant.

William R. Sherman, Student Counsel, with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Mary Ellen Abrecht, and Robert J. Behm, Asst. U.S. Attys., were on the brief, for appellee.

Before TERRY and ROGERS, Associate Judges, and PAIR, Senior Judge.

PAIR, Senior Judge:

Appellant was charged in a four count indictment with distribution of phencyclidine, distribution of marijuana, and possession of both substances with intent to distribute, D.C. Code § 33–541(a) (1986 Supp.). A trial by jury resulted in a verdict of guilty as charged. Appellant was sentenced to a term of imprisonment of six to eighteen years on the distribution charges, to be served concurrently with two years' imprisonment for possession with intent to distribute.

Appellant challenges as error (1) the court's pretrial ruling that the portions of a tape recording of the broadcast by the undercover police officer to the arrest team containing audible descriptions or identifications of appellant were admissible; and (2) the court's later ruling that appellant had "opened the door" to admission of the entire tape recording. Finding no error, we affirm.

The controversy centers around the testimony of Officer Paul Sinclair, who testified that on July 31, 1984, he was working in an undercover capacity in the vicinity of Kenilworth Avenue and Quarles Street, N.E., Washington, D.C. He drove into the area with his partner, Marilyn Cook, and as they approached the intersection of Kenilworth and Quarles, he saw a man standing on the corner, who was silently mouthing the words, "Boat, Boat." Sinclair took this to mean that he was selling PCP. He acknowledged the man, who then walked toward a blue Thunderbird automobile and picked up a clear plastic sandwich bag. He removed one tinfoil from the bag. He then walked to Sinclair's car and dropped the bag in the car. Sinclair gave him fifteen dollars in prerecorded Metropolitan Police Department funds. He then left the area and broadcast a lookout for a black male wearing a white captain's hat, with a red, white and blue windbreaker-type jacket, blue jeans that were cut off like shorts with long white socks with red, white and blue at the top, and white tennis shoes. He was advised by the arrest team that they had apprehended a suspect. He rode by and identified the suspect as the person who had sold him the drugs. There was a five minute time gap, and the officer testified that he was certain that this was the right man. The portion of the tape recorded radio broadcast containing Sinclair's de-

scription of appellant was then admitted into evidence.

On cross-examination Sinclair stated that there was never any actual conversation between himself and the person who sold him the drugs. He also agreed that his radio broadcast did not contain a physical description. Sinclair also stated that he had not learned of a "tussle" between appellant and Officer Feirson, a member of the arrest team, prior to his ride-by identification. Appellant's counsel suggested that appellant's arrest was contrived to cover up the altercation between appellant and Feirson prior to Sinclair's ride-by identification. In cross-examination and closing argument counsel repeatedly suggested that the officers could have switched to an unrecorded channel to discuss the altercation and arrange appellant's arrest to "nail the person who was likely to bring charges against [Feirson]."

In order to rebut appellant's suggestion during cross-examination that there had been conflict between appellant and Feirson before the identification and that the officers had switched to an unrecorded channel for part of their communications, the prosecutor sought to admit the entire tape over objection. After the court ruled that in light of the testimony, the government had the right to bring out that there was no such message on the tape, it gave defense counsel the choice of having the entire recording played or stipulating that the tape contained no support for his theories. Both sides agreed to a stipulation that was read to the jury.

■ In presenting his first issue, appellant acknowledges that the admission of tape recordings at trial is committed to the sound discretion of the trial court. *Springer v. United States*, 388 A.2d 846, 852 (D.C.1978). Appellant erroneously asserts, however, and for the first time on appeal, that tape recordings are properly admissible only if the tape constitutes direct evidence of the crime itself, or, in other words, where the taped conversation is part of the criminal act. A fair reading of the cases cited by appellant lend no support to this contention.

■ Moreover, we have held that a tape recording corroborating testimony is properly admissible for whatever weight the trier of fact deems fit to give it. *Stolar v. Stolar*, 261 A.2d 238 (D.C.1970) (citing 29 AM.JUR.2d *Evidence* § 436 (1967)). The only prerequisite for admissibility of recordings is a finding of authenticity, accuracy, and trustworthiness, *Springer v. United States, supra*, 388 A.2d at 852, none of which appellant challenged at trial or on this appeal.

■ Appellant also urges that admission of the portion of the recording pertaining to description and identification constituted hearsay, not falling under the exception for pretrial descriptions and identifications, and additionally, he claims that it amounted to impermissible corroborating evidence in the form of a prior consistent statement. Both arguments are without legal foundation as our case law clearly holds to the contrary when, as here, the witness is available at trial for thorough cross-examination. *See Morris v. United States*, 389 A.2d 1346, 1350–51 (D.C.1978).[1]

■ Appellant's second claim of error merits only summary discussion. Our review of the record reveals that appellant's contention that he did not "open the door" to admission of the entire recording is unfounded. Once the appellant has "opened the door," he "cannot complain on appeal that he was prejudiced by evidence relating to a subject that he himself opened up." *Peoples v. United States*, 395 A.2d 41, 45 (D.C.1978), *cert. denied*, 442 U.S. 911, 99 S.Ct. 2826, 61 L.Ed.2d 277 (1979). Additionally, here, because of appellant's stipulation, the entire tape was not even admitted into evidence.

*Affirmed.*

---

1. Also lacking legal support is appellant's contention that *Morris* only permits use of pretrial description and identification if it qualifies as an excited utterance. *See Jackson v. United States*, 354 A.2d 869, 872 (D.C.1976) (out-of-court identification by victim three weeks after the offense held admissible).